UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HEALTH CARE SERVICE CORP., § | |
| § | |
| Plaintiff/Counterclaim Defendant, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:13-CV-4946-B |
| § | |
| METHODIST HOSPITALS OF § | |
| DALLAS d/b/a METHODIST § | |
| HEALTH SYSTEM, § | |
| § | |
| Defendant/Counterclaimant. § | |

MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Reconsideration or New Trial (doc. 76), filed by Defendant/Counterclaimant Methodist Hospitals of Dallas d/b/a Methodist Health System on May 14, 2015. For the reasons stated below, the Motion is **DENIED**.

I.

BACKGROUND

As recounted in the Court's previous Orders, this case arises out of a dispute between a company that insures and administers health plans—Health Care Services Corporation ("HCSC")—and a medical services provider— Methodist Hospitals of Dallas d/b/a Methodist Health System ("Methodist")—concerning the application of the Texas Prompt Pay Act (the "TPPA") to the payment of certain claims. Tex. Ins. Code §§ 843.336 *et seq.*, 1301.101 *et seq.* In its January 28, 2015 Memorandum Opinion and Order, the Court granted HCSC's motion for summary judgment, concluding, among other things, that Blue Cross and Blue Shield of Texas ("BCBSTX"), the entity as which HCSC operates in Texas, is not subject to the TPPA's penalties under Chapter 1301 when

its function under a preferred provider benefit plan is to merely administer rather than provide health insurance in the traditional sense. Doc. 65, January 28, 2015 Memorandum Opinion and Order (the "January 28 Order") 22. This conclusion was based in large part on the parties' arguments regarding the text of Texas Insurance Code § 1301.0041(a), which outlines the applicability of the TPPA to preferred provider benefit plans, and on the interrelated definitions that this section encompasses—namely "insurer," "health insurance policy," and "preferred provider benefit plan." *Id.* at 9–14.

On May 14, 2015, Methodist filed the present Motion, requesting that the Court reconsider its summary judgment ruling. Doc. 76. HCSC filed a Response (doc. 78) on May 28, 2015, and Methodist submitted its Reply (doc. 79) on June 10, 2015. As such, the Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) provides for a court's alteration or amendment of a judgment upon a party's timely motion. A judgment may appropriately be altered or amended under Rule 59(e) to correct a manifest error of law or fact, to account for newly discovered evidence, or to accommodate an intervening change in controlling law. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Critically, Rule 59(e) motions "should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction." *Sanders v. Bell Helicopter Textron, Inc.*, No. 4:04-CV-254-Y, 2005 WL 6090228, at *1 (N.D. Tex. Oct. 25, 2005) (citing *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)). In other words, the Rule 59(e) remedy is extraordinary and should be used sparingly. *Templet*, 367

F.3d at 479. Indeed, the "remedy is so extraordinary that the standard under Rule 59(e) 'favors denial of motions to alter or amend a judgment.'" *Sanders*, 2005 WL 6090228, at *1 (quoting *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993)).

## III.

## ANALYSIS

Methodist asks the Court to amend its January 28 Order, which granted HCSC's motion for summary judgment. Doc. 77, Methodist Br. in Support of its Mot. to Alter or Amend J. ("Methodist Br."). As previously stated, in its January 28 Order, the Court concluded that when BCBSTX functions as a third party administrator of a plan, rather than as a traditional insurer of such plan, it is not an "insurer" that "provides, through the insurer's health insurance policy, for the payment of a level of coverage that is different depending on whether an insured uses a preferred provider or a nonpreferred provider," and therefore is not subject to Chapter 1301's penalty provisions. *See* Tex. Ins. Code § 1301.0041(a). Methodist anchors its Motion in the argument that the Court's ruling contradicts *Toranto v. Blue Cross and Blue Shield of Texas, Inc.*, a 1999 decision of the Texas Supreme Court, which neither party had referenced—let alone discussed—prior to the Court's January 28 Order. 993 S.W.2d 648 (Tex. 1999). Methodist insists that *Toranto* is dispositive, and that by failing to adopt its reasoning, the Court committed a manifest error of law and misconstrued Texas Insurance Code § 1301.0041(a)—the "Applicability Section" of the TPPA in the context of preferred provider benefit plans. Methodist Br. 1. Based on the holding in *Toranto*, Methodist urges the Court to set aside its January 28 Order and "issue a new order and opinion declaring that (1) BCBSTX is an 'insurer' under *Toranto* for all purposes of the TPPA, (2) the contractual arrangements in this case constitute a single 'preferred provider benefit plan' as defined in §

1301.0041, (3) BCBSTX is an insurer under such plan, (4) it 'provides . . . for' payment of medical and surgical expenses under that section, (5) it does so 'through [its] health insurance policy' as defined in that section, and that for these reasons, (6) BCBSTX is subject to the prompt pay penalties of the TPPA." *Id.*

As a preliminary matter, the Court notes that Methodist's Motion, while aiming to correct a manifest error of law, is not based on the Court's assessment of the parties' briefing and evidence filed pursuant to HCSC's motion for summary judgment, but is rather based on cases never before discussed and arguments not previously articulated. The Fifth Circuit has noted that motions for reconsideration under Rule 59(e) "'cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory.'" *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting *Fed. Deposit. Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)).

Despite Methodist's failure to emphasize the importance of *Toronto* in its previous briefing—which is in itself grounds for denying the Motion—the Court nevertheless considers the relevance of the case to determine whether it contradicts the Court's January 28 Order and reveals a manifest error of law.

A.  *Toranto v. Blue Cross and Blue Shield of Texas, Inc.*

In *Toranto*, the Texas Supreme Court considered "whether Texas Insurance Code article 21.24-1, section (3)a's anti-assignment prohibition applie[d] to Blue Cross Blue Shield of Texas" ("BCBSTX"). 993 S.W.2d at 648. This anti-assignment provision prohibited an "insurer" from issuing a policy that proscribed assignment of the benefits under the policy to a physician or other health care provider. *Id.* BCBSTX argued that it was not subject to this anti-assignment provision

because it was not an "insurer" under then-article 21.24-1, section 1(6) of the Insurance Code, which defined the term as "an insurance company, association, or organization authorized to do business in this state under Chapter 3 . . . of [the Insurance] code."[1] *Id.* at 649. BCBSTX insisted that, because it was "merely an independent contractor that administered" the plan at issue, it did not qualify as an "insurer." *Id.* The Texas Supreme Court rejected this argument, noting that the anti-assignment statute defined "insurer" as including any organization authorized to do business under then Chapter 3 of the Insurance Code. *Id.* The Supreme Court then clarified that, although BCBSTX acted as an administrator for the relevant plan, it was nevertheless an "insurer" under article 21.24-1 of the Insurance Code, and was therefore subject to its anti-assignment prohibition. *Id.*

Despite Methodist's insistence to the contrary, *Toronto* is not dispositive, as it says nothing of BCBSTX's status as "insurer" as defined under Chapter 1301 of the Texas Insurance Code at issue in this case. The court in *Toronto* discussed a definition in the Texas Insurance Code that is distinct and separate from the definition incorporated into Chapter 1301, which provides that an "insurer" is "a life, health, and accident insurance company, health and accident insurance company, health insurance company, or other company operating under Chapter 841, 842, 884, 885, 982, or 1501, that is authorized to issue, deliver, or issue for delivery in this state health insurance policies." Tex. Ins. Code § 1301.001(5). The court in *North Cypress Medical Center Operating Co., Ltd v. MedSolutions, Inc.* has likewise indicated the dissimilarity between the definition of "insurer" discussed in *Toronto* and that applicable to Chapter 1301 of the Insurance Code. No. H-10-2608,

---

[1] As Methodist indicates, article 21.24-1, section 1(6) of the Texas Insurance Code has since been recodified at section 1204.051(6), but the recodification did not alter this definition of "insurer." *See* Tex. Ins. Code § 1204.051(6); doc. 79, Methodist Reply 5.

2010 WL 4702298, at *5–6 (S.D. Tex. Nov. 10, 2010). The court in *North Cypress v. MedSolutions* determined that the plaintiffs had failed to plead sufficient facts to show that the defendant was an "insurer" under Texas Insurance Code § 1301.001 in order to support their claim under section 1301.067. *Id.* at *5. The court then addressed the plaintiffs' additional argument that, based on *Toranto*, an administrator—like the defendant in that case—can be an insurer within the context of the Texas Insurance Code. *Id.* The court rejected this argument, explaining that *Toranto* could not be used to confer insurer status on the defendant administrator, because "the definition of 'insurer' considered by the court in *Toranto* is not similar to the definition of 'insurer' in section [1301.001].[2]" *Id.* at *6. The court added that the definitions set forth in the section discussed in *Toranto* "apply specifically to the subchapter of the Texas Insurance Code dealing with assignment of benefit payments," while "[t]he definitions contained in section 1301.001 apply to the chapter dealing with preferred provider benefit plans." *Id.* at n.4. Thus, although the court would have concluded that plaintiffs' allegations were insufficient to survive the defendant's motion to dismiss even without reaching the argument as to *Toranto*, the court's reasoning is nevertheless persuasive and indicative of the differences between these two definitions of "insurer."

Moreover, while *Toranto* merely concerned whether an entity qualified as an insurer and thus whether it was subject to a provision that strictly applied to insurers, without further qualifications or descriptors, the present case involves plans in which an "insurer provides, through the insurer's health insurance policy," for the payment of a certain level of coverage. Tex. Ins. Code §

---

[2] The Court in *North Cypress v. MedSolutions* wrote: "the definition of 'insurer' considered by the court in *Toranto* is not similar to the definition of 'insurer' in section *13.001*." 2010 WL 4702298, at *6 (emphasis added). The discussion prior to this passage and the footnote that follows it clarify that the court referred to definitions applicable to the TPPA included in section *1301.001* of the Insurance Code. *See id.* & n.4.

1301.0041(a). In its January 28 Order, the Court reached its conclusion that BCBSTX does not qualify as this particular type of insurer based, in part, on the reading of the definition of "health insurance policy"[3] and on Methodist's concession that its contract with BCBSTX is "not 'insurance' as classically defined."[4] Doc. 22, Methodist Br. in Support of Resp. to Mot. for Summ. J. 8; January 28 Order 12, 14. In contrast, *Toranto* concerns a separate portion of the Texas Insurance Code, a distinct definition of "insurer," and a different context in which this definition is to be interpreted. Thus, after thorough review of the holding and reasoning set forth in *Toranto*, the Court determines that it does not reveal a manifest error of law in the January 28 Order .

B.  *The Contract between Methodist and BCBSTX*

Methodist raises an additional, new argument that hinges on the Court's adoption of its proposed reading of *Toranto*: that BCBSTX is an "insurer" that "provides" for payment "through [its] health insurance policy," and is thus subject to the prompt pay penalties of Chapter 1301, because patients' healthcare plans, BCBSTX's contract under which it administers these plans, and BCBSTX's preferred provider contracts all "constitute a single, integrated contract," which in turn qualifies as a "health insurance policy" under section 1301.001(2). Methodist Br. 5, 8, 12–15.

Because the Court determines that *Toranto* is not controlling on the issue of whether BCBSTX is subject to the prompt pay penalties of Chapter 1301, it need not consider Methodist's

---

[3] A health insurance policy is defined as "a group or individual insurance policy, certificate, or contract providing benefits for medical or surgical expenses incurred as a result of an accident or sickness." Tex. Ins. Code § 1301.001(2).

[4] Although Methodist now appears to deviate from this position and seeks to assert a new theory that its contract with BCBSTX should be considered "one, single, integrated contract" with the healthcare plans administered by BCBSTX and the administrative services agreement pursuant to which BCBSTX serves as administrator, this does not alter the Court's review of its decision here. Methodist Br. 12–15.

subsidiary arguments on this matter. Moreover, in asserting its arguments with respect to the contract between Methodist and BCBSTX, Methodist does precisely what the Fifth Circuit has instructed parties not to do: it has used its motion under Rule 59(e) "to raise arguments which could, and should, have been made before the judgment issued" and "to argue a case under a new legal theory." *Simon*, 891 F.2d at 1159 (quoting *Meyer*, 781 F.2d at 1268). By seeking to persuade the Court to construe patients' healthcare plans, BCBSTX's contract under which it administers these plans, and BCBSTX's preferred provider contracts all as "one integrated contract" as a matter of law, Methodist effectively raises a new theory, thus failing to explain how the Court's ruling, based on the evidence and arguments previously presented, constitutes a manifest error of law. What Methodist seeks, in fact, is a second opportunity to convince the Court of its claim through new arguments, in support of which it presents a newly-discovered (but not recently-decided) case where the court, explaining that "instruments pertaining to the same transaction may be read together to ascertain the parties' intent," concluded, based on the particular facts of the case, that a hospital services agreement, subscriber services agreement, and payor acknowledgment "constitute a single, unified contract" when it came to the administrator's obligation to pay certain claims. *Baylor Univ. Med. Ctr. v. Epoch Grp., L.C.*, 340 F. Supp. 2d 749, 754–55 (N.D. Tex. 2004). Methodist's attempt to point to another situation in which certain contracts were found to be one integrated contract cannot bridge the gap created by Methodist's failure to articulate this theory of contract interpretation in opposition to HCSC's motion for summary judgment. Thus, Methodist is not seeking to correct an error of law by pointing to a controlling case, as it tried to do through its discussion of *Toranto*, but is rather attempting to articulate a reason—for the first time—to show that the contracts to which BCBSTX is party are something other than what it described them as previously. The Court, in its

discretion, declines to entertain Methodist's attempt to relitigate matters and obtain the "extraordinary" remedy under Rule 59(e) through this novel argument and any related contentions it raises. *Sanders*, 2005 WL 6090228, at *1 (quoting *S. Constructors Grp., Inc.*, 2 F.3d at 611. Accordingly, the Court **DENIES** Methodist's Motion for Reconsideration.

## IV.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Methodist's Motion for Reconsideration. Doc. 76.

**SO ORDERED.**

**SIGNED: August 28, 2015**.

_____
**JANE J. BOYLE
UNITED STATES DISTRICT JUDGE**